# Peters v. Kash et al.

(Decided March 11, 1930.)

STEPHENS & STEELY for appellant.

H. C. GILLIS and O. W. BLACK for appellees.

OPINION OF THE COURT BY JUDGE CLAY—Reversing.

Mrs. Neeta Kash owns property abutting on Masters street in Corbin, and R. L. Peters, the contractor, brought this suit against her to enforce an improvement lien on her property for the sum of $1,710. On final hearing, the chancellor dismissed the petition, and Peters appeals.

In support of the judgment below, it is argued that the preliminary resolution of necessity was too indefinite and uncertain, in that it did not fix the grade or the extent of the improvement. The statute does not require that the resolution declaring the improvement to be a necessity shall fix the grade or set forth the plans and specifications for the improvement. All that it requires is that it shall set out "in general terms the character and extent of the proposed improvement." Section 3570, Kentucky Statutes. The preliminary resolution in question declared it a necessity to improve "Masters street from the center line of Laurel avenue to the city limits, and from gutter to gutter." It further provides that the improvement should be on the ten-year plan, and that the cost should be paid by the owners of the abutting property. In our opinion this was a substantial compliance with the statute, and the resolution was not void for uncertainty.

The original resolution was passed on January 14, 1919. Improvement was ordered by an ordinance enacted on February 25, 1919. On April 22, 1919, the city council passed a resolution resolving that it was the sense of the council that Masters street be improved under federal-aid supervision, on the ground that it was an inter county seat road, and a part of the Dixie Highway, and it was ordered that the council petition for state funds to make the improvement. The last resolution did not repeal or abrogate the original resolution of necessity. It was a mere effort on the part of the council to procure federal and state aid for the improvement of the street, and, the effort having failed, the resolution of necessity was left in full force and effect.

The further point is made that the resolution of necessity was obsolete, in view of the fact that nothing was done thereunder until December, 1923, when bids were advertised for. Though we have considered the question in several cases, we have never yet held what would be an unreasonable delay in proceeding under the resolution of necessity. Here there was no delay between the resolution and the ordinance ordering the improvement. The only delay was the failure to proceed under the ordinance. Our conclusion is that, where several streets are involved, no delay will be regarded as unreasonable unless it is made affirmatively to appear that temporary improvements have been made, or that the conditions have so changed as to impose on the abut-

ting property owners a burden which they would not have had to bear if there had been no delay. No such showing having been made in this case, it follows that the delay was not unreasonable and that the resolution of necessity was not obsolete.

But the principal ground urged in support of the judgment is that no lien was created because the grade and width of the improvement were fixed by the city engineer and the street committee, and not by the city council, and that the grade of the street was changed by the contractor. It appears that prior to the letting of the contract the city engineer had filed plans and specifications for the different streets, including Masters street, and that these plans and specifications were adopted by the city council. In the absence of a showing to the contrary, it will be presumed that the plans and specifications included the grade, and, they having been approved by the city council, the case is one where the grade was fixed by that body and not left to the determination of the city engineer. Nor do we find any merit in the contention that the width of the improvement was fixed by the street committee and city engineer and not by the council. The ordinance directed the improvement to be made "from gutter to gutter." There was already a sidewalk on one side of the street. To comply with the ordinance it was necessary to go to the gutter on the other side and leave a reasonable width for the sidewalk there. Whether or not the street committee could have reduced the width of the improvement to twenty-four feet, we need not determine. Regardless of any action on the part of the street committee, the contractor had the right to follow the ordinance and make the improvement from gutter to gutter, even though width of the improvement at that point was greater than it was on other squares. Equally without merit is the insistence that there was a substantial departure from the existing grade. It was necessary of course to make the improvement conform as far as possible to the grade of the sidewalk already established and to make the street connect on grade with both Laurel avenue and Bell avenue, which were only a short distance apart. If there be a depression in the street, it is not proper to follow the grade of the depression. On the contrary, the depression must be filled so that the grade of the street may be uniform, and the street suitable for the purposes for which it was built. While it was shown that in the con-

struction of the street a considerable fill was made at certain points, the evidence does not justify the conclusion that this was a departure from the established grade. On the contrary, it would seem that the natural condition of the old street was such as to require the fill in order to maintain uniformity of grade.

A large portion of the record is taken up with an attempt to show that in the construction of the improvement the property of Mrs. Kash was encroached on. Whether this be true or not, and what appellees' remedy would be if it were true, we deem it unnecessary to decide. It is sufficient to say that the evidence fails to show that appellant, the contractor, was in any way responsible for the trespass.

In conclusion we should not overlook the case of Ormsby v. City of London, 220 Ky. 148, 294 S. W. 1025, where, after citing several cases, we laid down the following rule:

"This court has adopted the rule that a property owner cannot stand by and see a contractor improve the streets in front of his place under a contract with the city, until after the work has been completed and accepted by the city, and then attack the proceedings under which the work was done for irregularities which do not render the proceedings void. This rule applies where the city irregularly does something which it had a right to do, but failed to take necessary steps to avoid irregularities. The rule is different when the city undertook to do something that it had no right to do, or did the thing in such a way as to render the act void."

A careful consideration of the entire record in this case has led to the conclusion that there was no such failure to observe the mandatory provisions of the statute as would render the proceedings void. That being true, and appellee having taken no steps to prevent the improvement other than to complain to the work hands and to file a protest with the street committee, she is estopped to complain of the proceedings.

It follows that the chancellor erred in holding the proceedings invalid.

As the question of spoliation was raised and not determined by him, the chancellor on the return of the case will hear further evidence on the question if that be the desire of the parties, and fix the value of the

property for the purpose of ascertaining whether or not the assessment exceeds the statutory limit.

Judgment reversed, and cause remanded for proceedings consistent with this opinion.